Good morning. My name is Mike Khoury and I'm here for Dr. Ebeid. This case gives the court the opportunity to weigh in on the current health care debate. It deals much with how Medicare claims are billed and when Medicare as an administrative agency pays claims or chooses not to pay claims. One statute that's mentioned in the University of Phoenix case that I wish I had briefed more fully is 42 U.S.C. Section 1320 C-5, which obligates all health care practitioners or any person, and I emphasize the word any person, to ensure when billing Medicare that the services are provided economically, with medical necessity, and in accordance with the highest standard of care. When the corporate practice of medicine takes over, the billing function takes over, the delivery of care takes over every aspect of how health care is delivered. It is impossible. Could I stop you there just to get some clarification? Yes, Your Honor. I have to say I'm a little confused by how the corporate practice of medicine and the Arizona law really figure into this case, because what you need is a false claim submitted to the federal government, and while there well may be this additional issue with structure under the Arizona law, how does that fit into your federal false claim under Medicare? In two ways, Your Honor. Number one, the doctors here were acting outside the scope of their licensure, much like if they were licensed in New Mexico and not in Arizona. Medicare would not have paid those claims had Medicare known that the doctors were acting in violation of Arizona law and were practicing within a context that is not condoned by Arizona law. Regardless of Arizona law, when a bill is issued, then under Section 1320C5, the biller is promising the government that the services are being rendered economically, with medical necessity, and in accordance with the standard of care. And when the doctors are not in control, then it is impossible for the corporate biller to make those representations to the government. Kagan. And that brings me to my second question, because what you've alleged is a scheme, in effect, and it seems to me that the False Claims Act doesn't really get at schemes, per se, it gets at claims, and that goes to the district court's ruling that you don't have the specificity here required as to the claims that are problematic. And if you were given an opportunity, maybe you would amend again to do that. But my question is really under Rule 9, how can you defend on a false claims claim if you don't provide the underlying material? Yes, I do allege a scheme. And just so that there isn't any confusion, no, there's nothing more to allege. The point of this case is the appellees receive money that Medicare, had they known the truth, would not have paid. It is impossible in this context to allege specific billing information, and the reason why it is impossible is because none of the doctors were in control of the billing. None of the doctors prepared the billing. None of the doctors who worked at the clinics looked at the billing before they went out. It is absolutely impossible. And an interpretation of the False Claims Act that requires a specific claim, when the specific claim is really irrelevant to the scheme. Well, there has to be some kind of claim for there to be a false claim. We've alleged over 10 years of claims. And we've alleged that every single one of them is false. And as a matter of fact, at docket number 76 and in the district court's order dismissing the case, there was a protective order with respect to the billing information that had been entered into between myself and my colleagues. Let me ask you this. How do you square your theory with the Hopper case in which we said that the violation of a law, rule, or regulation alone does not make a claim under the False Claims Act, but only the false certification creates liability if the certification is prerequisite to payment? I'm paraphrasing, but that's the essence of it, that it isn't the violation of the statute that creates liability. It's a false certification. Understood. And I think every time a bill was submitted by the appellees, they are impliedly certifying to Medicare that the services are being rendered economically with medical necessity. When you add implied, that's my problem exactly with your theory. It seems to me that the reasoning behind Hopper doesn't leave room for implied false certification, because it said straight up the violation of the law is not a claim. It requires a certification that is false. That's a real certification, a place where you sign your name. And I don't think that's possible in the context of the corporate practice of medicine, because the billers are not subject to any regulation. They take on the persona of the doctors, and they submit the bills on behalf of the doctors. And so the biller, in this case herself, certified nothing expressly for the very purpose that they don't have to. They're completely unregulated. Well, I guess what you're really saying is if that the problem that you've identified if we don't recognize implied false certification, the problem that you've identified may go unpunished or unremitied in some way. But I don't know how that alters the analysis, because the statute is what the statute is, and our precedents are what they are. And there may be wrongs that aren't righted by this statute. And I think this is the first case that raises the issue of the corporate practice of medicine in a false claims context, and one of the very few cases across the nation that raises the Stark Law as a violation with respect to the False Claims Act. The act requires a claim, and we know that these clinics haven't been in business for the last 10 years for free. They made claims to Medicare. We've alleged that. We know that. The claims --. If the Hopper case can be reconciled with the Mikes case out of the Second Circuit, even there in Mikes, which dealt with an implied Medicare claim, they require this specific link between the statute, the certification, and the claim. In your view, how does Mikes apply here? Well, I think that what we're really talking about is a factual issue of causation. This administrative agency, Medicare, would not have paid any of these claims had Medicare known that the billings were violating the prohibition against corporate practice of medicine and the Stark Law. But before you would get to that point, my understanding of Mikes would require something that's more akin to a legal issue than a factual issue, and that's the foundational statute and the nature of the foundational statute, which are very similar to what you're talking about here, and they found that it wasn't satisfied. Well, I think here at the outset it isn't satisfied because there's no way that a corporate in accordance with the standard of care and economically. This case reaches out to the Court to write what at least is alleged as wrong. Well, in order to do that, we have to reach out to Arizona law. I think that's true, Your Honor, in the first instance. So I don't – maybe I'm missing something, but I don't – maybe you could explain why compliance with Arizona law has to be a precondition to the claim. Well, maybe – I think whenever you go to the doctor, everybody believes that the doctor is acting within the scope of law. They did go to the doctor. The doctor performed a service. Now, if it had been done in any other state, there would be no question. But because Arizona has its own unique law, you indicate that there's – it's invalid. But why – you'd have to explain why do we have to have compliance with state law in order to find this false claims act under the federal law. Well, maybe I misspoke. I don't think you do. I think the point is that Medicare would not have paid these claims had they known the corporate practice of medicine was going on. The corporate practice of medicine – And you base that upon what case? I base that upon 42 U.S.C. 1320, because how can the corporate biller certify that the bills are correct and that the standard of care is adhered to when the doctors don't have anything to do with the actual billing? So there's no case on it. It's the statute itself. Yes, Your Honor. This is the – And your view is that statute is undoubtedly covering this situation? Yes, Your Honor. And is that statute in your complaint? No, Your Honor. I didn't think so. It's not. I guess I could amend to include that statute in my complaint. Again, not to over-reiterate, this is a case where had Medicare known what was going on in the examining room, which is explained in some of the documents that are part of the record that reveals the discovery about the office manager ringing the bell after a 15-minute visit, had Medicare known, they wouldn't have paid. This case is more about what Medicare would do within the discretion of an administrative agency. I understand your problem, but what bothers me is the reach of your interpretation, this statute, could lead us to the place where in order to enforce the statute, the government would be required to look at 50 different problems in how they treat doctors in order to determine whether or not there's fraud. And I just asked myself the question, is this really necessary? That is, does the statute require that the Federal Government take the nuances of each State into consideration as to whether or not there's a false claims act case? And I think the answer to that is no. The issue is, would Medicare have paid had they known that the doctors were not in control? And that applies in all States. And regardless of where Arizona law falls, let's assume that corporate practice of medicine is legal in Arizona. That does not change my case, because it does not change what happened in the examining room according to the discovery that we put in our briefs. The issue is, what would Medicare have done? They wouldn't have paid these claims had they known that the doctors were not in control and had they known that the doctors were financially interested. Counsel, you have exceeded your time by several minutes. I have, Your Honor. I apologize. We'll hear from the other counsel at this point. Thank you. Thank you very much, Your Honor. Good morning. May it please the Court. My name is Paul Ulrich. I'm counsel for Appalese. My co-counsel is Noel Capps. The Court's questions really go right to the heart of this matter. And particularly in light of Mr. Curry's concessions, that the statute that he's talking about and what Medicare might or might not have done is simply not pleaded in the complaint. Mr. Curry acknowledges he can't plead more specifically. He can't do any better than he's done. His brief says he doesn't have any specific information about any false claims. And when you, you know, look at the complaint itself and Judge Bolton's opinion and look at what was alleged and what was decided, it's clear that, number one, to the extent that there are allegations of false claims, there's no detail provided, so it doesn't meet the specificity of pleading requirement. And the argument that was made in the district court and in the complaint was that simply because it's alleged that there was unlawful corporate practice of medicine, this complaint should be permitted. There was no, I must emphasize, there was no argument in the claim, in the complaint, of any express or implied certification going to all of the billings. There is talk in the complaint about unspecified certifications concerning referrals and whether patients were homebound. Those go, you know, arguably to some claims, but there's no specific examples. So the certification is not what that was presented in the district court, is not what Mr. Curry has tried to present on appeal. Let me ask you a question about your view of what needs to be pleaded in a situation in which a claim of falsehood, a false claim claim, is broad and not narrow. For example, let's suppose that a physician treated, you know, 100 Medicare patients and the physician actually had been defrocked. I don't know what the right word is, but had lost his license to practice medicine but was still filing claims as if a real doctor. What would have to be pleaded by someone who was alleging a false claim from those presentations of 100 Medicare reimbursement requests? Well, the ‑‑ I think the falsity would have to be tied to the claim. And if this is talking ‑‑ so what you're talking about is not any improper service. The doctor didn't do anything wrong or overcharge. Right. That's why I'm trying to get a universal problem that would not be sort of state by state, but someone masquerading as a doctor who isn't really a doctor performing, you know, medical services for which reimbursement is sought. So you're not talking about specific service. You're talking about certification. Yes. It's a certification issue, which is not in this case. But I think the cases would say that there has to be somewhere alleged and existing a statute that requires the doctor to be licensed to practice medicine, so that submitting a claim then would be in violation of that ‑‑ of that requirement. But ‑‑ or in some of the cases say that there has to be a requirement in the statute that the certification be tied to the payment. And I think the point here is that ‑‑ Well, let me just follow through so that I understand your position. In the example that I've given, the specificity, I take it, would have to be to describe why it is the person isn't really a doctor and that they have performed services and that they have certified that they're entitled to this reimbursement, which is false, right? Well, right. All of those things would need to be pleaded. And part of it would be that specific services were provided to particular patients in violation of the doctor's status and some express certification tied to a payment that he is required to practice medicine. Now, on this record, we don't know any of that because none of that was alleged. And so there was nothing for Judge Bolton to decide on that point. The question really ‑‑ that's clear. The question is whether he needs to do so. Now, you're arguing this, it seems to me, as a factual fault. But that's not the way the complaint comes to us. What comes to us is that he's pled legal falsity. That is, what he's saying is it isn't a question that there's a place for you to check off, yes, I am a licensed practicing physician under the law of my state of residence. What he's saying is there's a legal falsity here so that every billing that goes in has the problem. Now, if he's taking that track, legal falsity, then there's nothing to allege specifically because he's saying all of them are bad. Right. Now, isn't there a difference between alleging something as a factual fault and as a legal fault as far as false claims are concerned? Right. And the cases make that distinction. There really are two separate ideas here. One is that the False Claims Act is intended to get at false claims, specific, you know, overbilling, services not provided, express certifications. But it is not intended to reach general underlying illegality. Why do you say that? Because it's not tied to a claim. There's no false claim. It's tied to every claim. That's the problem. No. No. Because the statute, you know, it is possible to say in a different world, perhaps, the statute might have reached that far, but it doesn't. And these courts' cases say that it doesn't. In particular, Judge Graber, I think, noted Hopper and the Hendo case that she was involved in, and Clausen and the Eleventh Circuit, other cases, say that simply underlying illegality is not what the statute is. But what about illegality tied to payment? Tied to payment. Which then goes, for example, if you had a scheme that was more akin to what was described in the Mikes case, where you have a statutory scheme and you can link up the submission of a claim with an undertaking, statutorily, in another statute, and, in effect, they are then merged, that's the, you know, that's the implied false claim by virtue of the statutory structure. I don't know if that's what's alleged here, but that's not. It's not. But I'm just asking, do you, in your view, would that kind of a scheme be permissible under the False Claims Act? No. No. Because the, what Mikes says is that implied false certification is appropriately applied only when the underlying statute of regulation upon which the plaintiff relies expressly states the provider must comply in order to be paid. And then it also says, again citing Hopper, that a claim under the False Claims Act is legally false only where a party certifies compliance with a statute of regulation as a condition to governmental payment. It's tied to payment. Tied to payment. And that's why Mikes is helpful and it goes back, and Mikes relies on Hopper. So there are several circuits that have dealt with this general subject and have drawn a line. And I think what gets obscured here sometimes is the, and I think this is inherent in Judge Wallace's question, on the one hand, you have a requirement of specific pleading as to factual matters. But then on the other hand, there is the question of the scope of the statute and where does the statute end in terms of allowing a claim. And that ends where it's not tied to payment. And there's no allegation here that it is. Mr. Corey admitted that, you know, he didn't plead this statute that he now wishes he cited in his briefs. This is totally new and that just wasn't before Judge Bolton. So we submit that under those circumstances, based on the complaint that was before her, what was alleged there, Judge Bolton correctly decided that it did not state a claim, both because of the lack of specificity and because of the, what they're talking about. The key. Let me just push one other point. Sure. I know you're running out of time, but this is something that bothers me. I want to get your response. We've had these cases involving express and implied cases. We haven't yet decided in Ninth Circuit whether implied cases are going to pass muster, but certainly other circuits have, to the extent that we might consider that. Isn't this the question? Isn't this case that we have before us the type of case which is an implied case? That is, there's an – it can be implied that all of the claims are bad because of the process involved that is alleged in the complaint. Well, two answers, Your Honor. One is that that was not pleaded, and that was not before the district court, and it's not, therefore, properly here, and the court, therefore, doesn't need and shouldn't reach it. This is not an appropriate case to do that. There might be some other case of implied certification, but not this one. And then the other part, and going back to Judge Graber's question, that this, if there is any implied misrepresentation, it's not tied to payment. There's just some free-floating illegality out there somewhere, somehow, and that's not enough. It's tied to every payment. That's his argument. He says it's tied to every payment. If there isn't one, it's all. But there's no showing of any requirement of certification. This is what's missing. In looking at this, you have to see what isn't there, as well as what is there. And what isn't there is any tie of any implied certification to payment and a claim, and a claim. I realize I've used my time, and I appreciate the Court's indulgence. Thank you. Okay. Thank you. We'll give you a minute for rebuttal. Thank you. I've learned so much from counsel, and I have. But the fact of the matter is, Your Honor, I understood. We can't get that specific, because we'd have to look at the actual claim forms that with a doctor's provider number, with a provider number of the corporate defendants, with a group number. We just can't do it. And that's the point of this case, because the corporate billers ---- Is there specificity at the other end to prove that if everything else is the way that you have alleged, then Medicare would not have paid? That is, can you demonstrate in theory on this complaint that Medicare won't pay? And that's the part that bothers me, that you say that, but I don't really see the details of why that is so. I think that's a factual matter. I think that's up to the testimony of Medicare itself and the experts that would be called at trial. However, I don't think it's such a great leap to say that if doctors are violating Stark, that they were financially interested and had Medicare known that their services were tied to their financial interests, that they wouldn't have paid. And I don't think it is such a leap to say that if doctors are acting outside the scope of either the state prohibition against the corporate practice of medicine or the national one, that Medicare would not have paid. And I think if we make it an issue, like Your Honor suggests, as opposed to an issue of how an administrative agency will exercise its discretion, then the courts are going to be involved in deciding how Medicare claims are administered. And I believe the purpose of the court is to stop fraud, is to stop individuals enriching themselves at the public fisk when they should not be able to do so. And that complaint alleges that there was nondisclosure, not implied false certification. But in my mind, they're the same. It's like one's a rabbit, one's a hare. They both have cute little ears. But we do understand your position and you've exceeded your time by quite a bit. So thank you very much. Thank you. The case just argued is submitted.
judges: Wallace, Graber, McKeown